IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| QUALIA CLINICAL SERVICE, INC., | ) | CASE NO. BK09-80629-TJM |
| | ) | |
| Debtor(s). | ) | CH. 11 |

### ORDER

Hearing was held in Omaha, Nebraska, on July 28, 2009, on the debtor's omnibus objection to certain claims (Fil. #93) and objections by Mary Meeves (Fil. #107), Jon M. Cady (Fil. #111), Marilyn E. Olmer (Fil. #113), Ruth A. Kline (Fil. #114), Patricia Carro (Fil. #115), Phillip Eckel (Fil. #117), Dorothy Jackson (Fil. #120), and Charles E. Argo, Jr. (Fil. #121). Jenna Taub appeared for the debtor and Casey Quinn appeared for Phillip Eckel. Jon Cady, Marilyn Olmer, Ruth Kline, Patricia Carro, and Charles Argo, Jr., appeared on their own behalf.

The omnibus objection to claims is denied.

The debtor was in the business of conducting clinical research for biotech and pharmaceutical companies. Some of the research entailed medical testing of pharmaceutical products on compensated volunteers. The claimants involved in this matter are participants in Qualia's controlled drug studies who had not been paid for their services as of the petition date. The claimants filed their claims as priority wage claims under 11 U.S.C. § 507(a)(4)(A).[1] The debtor objects to the characterization of the claims as priority claims, arguing that the study participants were not Qualia employees and therefore are not entitled to priority under § 507(a)(4)(A), but rather hold general unsecured claims to be paid pro rata from any funds that may be available later in the case.

It is undisputed that the study participants were not Qualia's employees in the traditional sense. The issue of whether individuals who are not employees are nevertheless entitled to priority wage claims under § 507(a)(4) depends on whether something more than a "mere contractual relationship" existed between the parties, as well as on the amount of control exercised over the

---

[1]That section states:

(a) The following expenses and claims have priority in the following order:
. . . .
(4) Fourth, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[.]

claimants by the debtor. For instance, counsel for Qualia cited the case of In re Hutchinson, 223 B.R. 586 (Bankr. M.D. Fla. 1998), which makes clear that an attorney who filed a priority claim to recover for previous legal fees owed to him did not fall within the purview of § 507(a)(4) because the statute is aimed at protecting those claimants who "are truly engaged in a master/servant relationship" with the debtor, rather than those who simply have a contract with the debtor. Likewise, a case from within the Eighth Circuit, In re Grant Indus., Inc., 133 B.R. 514 (Bankr. W.D. Mo. 1991), held that a wage claim by a temporary employment agency could not be allowed (1) because the claimant was not an individual and did not hold wage assignments from the workers, and (2) because the claimant agency simply provided contract services to the debtor; the debtor had no "obligations normally incident to an employment relationship."

In the case of In re Dahlman Truck Lines, Inc., 59 B.R. 218 (Bankr. W.D. Wis. 1986), the bankruptcy court disallowed a priority claim by a corporate claimant, again because the claimant was not an individual and did not have wage assignments from the individuals, but also because there was no satisfactory evidence of an employer-employee relationship. The two corporate entities had executed a written agreement that expressly stated the parties' intent to create an independent contractor relationship and not an employer-employee relationship. The court said this evidence was not controlling, but was relevant. The claimant also alleged that: the debtor had "exclusive" control over the hiring and firing of drivers; the claimant company worked solely for the debtor; the debtor held all license plate permits; the debtor trained the drivers; the debtor instructed the drivers daily where to pick up their loads; the debtor provided workers' compensation insurance; and the debtor's logo was on all of the trucks. Nevertheless, the court said these facts were "not sufficient in and of themselves, to establish the claimed relationship." 59 B.R. at 221.

In contrast, a case from Massachusetts found that non-employees who performed services for the debtor laboratory were entitled to wage claim priority. In re Wang Labs., Inc., 164 B.R. 404 (Bankr. D. Mass. 1994).[2] The court reviewed the history of the wage priority statute from the 1841 Bankruptcy Act forward. Upon examining the legislative history from the 1978 Code, the court determined that Congress intended to "expand and increase the wage priority," leading to the conclusion that independent contractors are included in the class of wage claims. The court distinguished cases requiring a master-servant relationship by opining that "[p]erhaps the control issue was relevant under the Act, where we were concerned with 'workmen, servants, and clerks,' . . . but we now address ourselves to the compensation of 'individuals.'" 164 B.R. at 408. In granting wage priority to the claims, the court found that

> in broadening the class of persons to whom the wage priority might be applied from "workmen, servants, clerks, or traveling or city salesmen" to encompass all natural persons, Congress intended similarly to open the scope of "wages" to include compensation paid to such persons, whether employees or independent contractors.

---

[2]The claimants are identified in the opinion only as "individuals and firms who performed services for [the] debtor other than as employees," so it is unclear whether any of them were subjects of medical testing.

> The meaning must be derived from the context and not taken either in the abstract or from another context.

164 B.R. at 408.[3]

In Nebraska, the caselaw on distinguishing an employee from an independent contractor focuses on 10 factors:

> (1) the extent of control which, by the agreement, the employer may exercise over the details of the work, (2) whether the one employed is engaged in a distinct occupation or business, (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision, (4) the skill required in the particular occupation, (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work, (6) the length of time for which the one employed is engaged, (7) the method of payment, whether by the time or by the job, (8) whether the work is part of the regular business of the employer, (9) whether the parties believe they are creating an agency relationship, and (10) whether the employer is or is not in business.

Delicious Foods Co. v. Millard Warehouse, Inc., 507 N.W.2d 631, 636 (Neb. 1993). The right of control is the preeminent factor to be considered. Keller v. Tavarone, 628 N.W.2d 222, 228 (Neb. 2001).

When considering Wang Labs' expansive interpretation of the scope of individuals covered by the wage priority statute, in conjunction with the elements of an employment relationship deemed important by the Nebraska Supreme Court, it becomes clear that the claimants in this case are entitled to wage priority payment of their claims.

First, they have met the "control" requirement. Each claimant signed a "Subject Information and Consent Form" in order to be allowed to participate in each medical study. The consent forms were lengthy and detailed, explaining such matters as the nature and purpose of the particular medical research study, the study's sponsor, the requirements for participation in the study, the collection and use of participants' personal health information and specimen samples, possible

---

[3] It should be noted here that Congress added § 507(a)(3)(B) [now (4)(B)] as part of the Bankruptcy Reform Act of 1994 "to codify Wang and clarify 'that *independent sales representatives* of a bankrupt debtor are entitled to the same priority as the employees of the debtor . . . .' H.R. Rep. No. 835, 103rd Cong., 2nd Sess. (1994) (emphasis added)." In re Kitty Hawk, Inc., 2002 Bankr. Lexis 1996, at *9 (Bankr. N.D. Texas, Nov. 26, 2002). In Kitty Hawk, the court found that the claimant was clearly an employee, but, interestingly, it added in dicta that "Congress knew how to say employee in the Code when it intended to, *see e.g.*, § 507(a)(4) [now (a)(5)], and the arguably broader language 'individual' in § 507(a)(3)(A) [now (a)(4)(A)] may have significance." Id.

health risks of participating in the study, and the compensation schedule for participating in each phase of the study. The study protocols necessarily required rigid control of the claimants' participation: the studies were conducted at Qualia's premises, requiring periodic overnight stays of several consecutive nights by the subjects, with strict oversight by Qualia personnel of the subjects' diet and activities. Qualia imposed exacting schedules for eating, sleeping, recreation, dosage, and medical testing, including lifestyle restrictions preceding and succeeding the on-site tests. The subjects had little or no autonomy during the course of their participation in each phase of a study. The extent of Qualia's control over the claimants' performance in the studies effectively rendered them "employees."

With regard to the subjects' compensation for each study, Qualia did not consider the claimants to be employees for its payroll purposes. Participants filled out federal W-9 tax forms and were issued 1099 forms at the end of each year reflecting payments made to them. Qualia did not withhold income taxes from the amounts paid to them for their study participation. Nevertheless, Qualia needed these people in order to conduct its business. Willing subjects were necessary for Qualia's research programs and it agreed to compensate those subjects for their participation. The context and nature of the subjects' relationship with Qualia really was that of short-term employees. They had more than a "mere contractual relationship" with Qualia, and they have established enough factors under Nebraska law to warrant granting priority to their claims under § 507(a)(4)(A).

IT IS ORDERED: The debtor's omnibus objection to certain claims (Fil. #93) is denied.

DATED:   August 10, 2009

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Jenna Taub
    Casey Quinn
    Jon Cady
    Marilyn Olmer
    Ruth Kline
    Charles Argo, Jr.
    Patricia Carro
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.