IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-80629-TJM |
| | ) | |
| QUALIA CLINICAL SERVICE, INC., | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM

Hearing was held in Omaha, Nebraska, on February 8, 2010, on Debtor's Objection to Claim of Robert J. Schwab (Fil. #203), and a Resistance thereto filed by Robert J. Schwab (Fil. #209). Robert Craig appeared for Debtor, Brian Kruse appeared on behalf of the Chapter 7 Trustee, and Richard Myers appeared for Robert J. Schwab. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

Robert J. Schwab is a physician who worked for Debtor in connection with its drug-testing business. As part of Dr. Schwab's compensation, Debtor agreed to pay his medical malpractice insurance premiums, but Debtor failed to do so, both pre-petition and post-petition. In order to ensure continuation of medical malpractice insurance, Dr. Schwab paid the premiums himself and filed a claim asserting priority under 11 U.S.C. § 507(a)(4) for the premium amounts he paid within 180 days pre-petition. Debtor objected to the priority classification.[1] For the reasons stated below, I find that Dr. Schwab's claim is entitled to priority status, but under § 507(a)(5) rather than § 507(a)(4).

*Background*

The facts of this case are undisputed:

1.    Dr. Schwab is a physician licensed to practice medicine in the state of Nebraska. Dr. Schwab worked for Debtor in connection with its drug-testing business.

2.    The former controller for Debtor, Dale Gray, submitted an affidavit (Fil. #240) acknowledging that "Debtor agreed to pay Dr[.] Schwab's medical malpractice insurance premiums while Dr[.] Schwab was employed by Debtor[.]" It is undisputed that at some point pre-petition, Debtor ceased paying Dr. Schwab's medical malpractice insurance premiums and Dr. Schwab paid the premiums directly himself.

3.    This bankruptcy was filed on March 18, 2009, and Dr. Schwab subsequently filed his proof of claim asserting a priority unsecured claim under 11 U.S.C. § 507(a)(4) in the amount

---

[1]Subsequent to Debtor filing the claim objection, this case was converted from Chapter 11 to Chapter 7. Therefore, the Chapter 7 Trustee assumed the role of the objecting party.

of $10,950.00. However, at the hearing, counsel for Dr. Schwab acknowledged that the pre-petition portion of his claim should be reduced to the sum of $5,898.11, which was paid in January 2009, well within the 180-day period referenced in § 507(a)(4).[2]

*Discussion*

The Chapter 7 Trustee objects to the classification of Dr. Schwab's claim as a priority claim for wages. 11 U.S.C. § 507(a) provides the priorities of various classes of unsecured claims. Subsection (4) gives fourth priority to:

> [A]llowed unsecured claims, but only to the extent of $10,905 for each individual . . . earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>    (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual[.]

Historically, the United States Supreme Court has narrowly interpreted the priority granted to "wages" under the foregoing section and has held that contributions for benefits, such as life insurance, health insurance, and pension plans, do not constitute "wages" entitled to priority status. *See United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S. Ct. 554, 3 L. Ed. 2d 601 (1959), and *Joint Indus. Bd. of Elec. Indus. v. United States*, 391 U.S. 224, 88 S. Ct. 1491, 20 L. Ed. 2d 546 (1968).

As a result of those decisions, Congress reacted by amending the Bankruptcy Act in 1978 by adding what is now § 507(a)(5) giving priority to certain "contributions to an employee benefit plan." As discussed in the case of *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 126 S. Ct. 2015, 165 L. Ed. 2d 110 (2006):

> To provide a priority for fringe benefits of the kind at issue in *Embassy Restaurant* and *Joint Industry Bd.*, Congress added what is now § 507(a)(5) when it amended the Bankruptcy Act in 1978. See H.R. Rep. No. 95-595, p. 187 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6147-48 (hereinafter H.R. Rep.) (explaining that the amendment covers "health insurance programs, life insurance plans, pension funds, and all other forms of employee compensation that [are] not in the form of wages"); S. Rep. No. 95-989, p. 69 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5855. Notably, Congress did not enlarge the "wages, salaries, [and] commissions" priority, § 507(a)(4), to include fringe benefits. Instead, Congress created a new priority for such benefits, one step lower than the wage priority.

---

[2]Although there is no evidence in the record regarding the amount paid pre-petition and the date it was paid, the attorneys agreed at the hearing that the sum of $5,898.11 was paid in January 2009. The contested issue is not the amount of the claim, but whether the claim can be classified as a priority claim.

547 U.S. at 658-59.

In *Howard*, an insurance company had filed an unsecured claim to recover unpaid premiums for workers' compensation insurance coverage and sought priority for that claim as contributions to an employee benefit plan. As such, the *Howard* case is not directly on point, but it does shed light on the United States Supreme Court's interpretation of the applicability of 11 U.S.C. § 507(a)(4) and (5).

In discussing § 507(a)(5), the Court stated:

> Beyond genuine debate, the main office of § 507(a)(5) is to capture portions of employee compensation for services rendered not covered by § 507(a)(4). The current Code's juxtaposition of the wages and employee benefit plan priorities manifests Congress' comprehension that fringe benefits generally complement, or "substitute" for, hourly pay. See H.R. Rep., at 357 (noting "the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted")[.]

*Id.* at 659 (internal citations omitted).

Then, when specifically discussing workers' compensation insurance, the Court stated: "Unlike pension provisions or group life, health, and disability insurance plans – negotiated or granted as pay supplements or substitutes – workers' compensation prescriptions have a dominant employer-oriented thrust: They modify, or substitute for, the common-law tort liability to which employers were exposed for work-related accidents." *Id.* at 662. Further, the Supreme Court went on to state:

> Employer-sponsored pension plans, and group health or life insurance plans, characteristically insure the employee (or his survivor) only. In contrast, workers' compensation insurance, in common with other liability insurance in this regard, *e.g.*, fire, theft, and motor vehicle insurance, shield the insured enterprise . . . . When an employer fails to secure workers' compensation coverage, or loses coverage for nonpayment of premiums, an affected employee's remedy would not lie in a suit for premiums that should have been paid to a compensation carrier.

*Id.* at 664.

In the end, the Supreme Court determined that workers' compensation insurance premiums did not fall within the category "contributions to an employee benefit plan." *Id.* at 668 (stating "[w]eighing against such categorization, workers' compensation does not compensate employees for work performed, but instead, for on-the-job injuries incurred; workers' compensation regimes substitute not for wage payments, but for tort liability.").

At first blush, it would appear that liability for the medical malpractice insurance premiums should suffer the same categorization fate as workers' compensation insurance premiums since malpractice insurance deals with tort liability. However, a closer application of the Supreme Court's *Howard* analysis to the facts and circumstances of the case at hand dictates a different result.

Specifically, the legislative history referenced above clearly establishes the congressional intent that the amendment establishing what is now § 507(a)(5) was intended to cover "all other forms of employee compensation that [are] not in the form of wages." The parties in this case agree that part of Dr. Schwab's compensation was that Debtor would pay his medical malpractice premiums. Alternatively, Dr. Schwab could have negotiated a greater pay in lieu of his employer paying his medical malpractice premiums. Thus, the payment by Debtor of those premiums appears to be a substitute for or a complement to his hourly pay.

Further, medical malpractice insurance is not something that Debtor was required to carry, but instead something Dr. Schwab was required to carry. Workers' compensation insurance, on the other hand, is something the employer is required to carry. Medical malpractice insurance protects Dr. Schwab from tort claims that may arise in the performance of his job as a medical professional. Workers' compensation insurance protects both the employer and the employee for injuries that the employee may incur in the course of performing duties.

Since the employer's obligation to pay Dr. Schwab's medical malpractice insurance premiums appears to fall within the broad interpretation of "an employee benefit plan" articulated by the United States Supreme Court, I find that Dr. Schwab's claim for the amounts he advanced pre-petition are entitled to priority under 11 U.S.C. § 507(a)(5).

Separate order to be entered.

DATED:  February 12, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Robert Craig
    Brian Kruse/Rick D. Lange
    Richard Myers
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.